■ LOTTIE BRANHAM, Respondent, v LOEWS ORPHEUM CINEMAS, INC., Appellant, et al., Defendants. [819 NYS2d 250]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered November 12, 2004, which denied defendant-appellant Loews's motion for summary judgment, reversed, on the law, without costs, the motion granted and the complaint dismissed as against Loews. The Clerk is directed to enter judgment in favor of Loews dismissing the complaint as against it.

On January 11, 1998 plaintiff Lottie Branham went to see the movie "Titanic" with her friend Isadora Mulzac at the Loews Cinema at 86th Street in Manhattan. At some point during the film, plaintiff left the theater to use the restroom. As she left the theater by the center aisle, she did not observe anyone walking, sitting or standing in the aisle. Plaintiff testified at her deposition that she was gone from the theater for seven or eight

minutes, although she was not sure. She also testified that there was no line at the restroom and that she did not stop anywhere else while walking to or returning from the restroom. According to plaintiff, it was very dark in the theater at the time she left and when she returned. She did not observe any lights along the floor of the center aisle, nor did she see any lighted exit signs or lights on the theater walls.

Upon returning from the restroom, plaintiff walked down the same center aisle and began looking for her seat. She did not observe any obstructions in the aisle until she suddenly stumbled over something. Subsequently, she discovered that she had tripped over a nine- or ten-year-old child, a boy, who was sitting in the aisle. Plaintiff fell over the boy, sustaining various injuries including a twisted knee and fractured arm. Plaintiff remained there until the police and ambulance personnel came to assist her.

Plaintiff commenced the instant action for personal injuries against defendant Loews, the operator of the theater, and the owners of the premises.[1] In her complaint, she alleged that defendants were negligent in failing to maintain the premises in a reasonably safe condition by permitting a child to sit in the aisle of a darkened movie theater, thereby creating a tripping hazard, and by failing to have adequate lighting in the theater during the movie.

During discovery, Loews's manager, Ruben Fernandez, testified at deposition that the theater had ceiling floodlights, 8 to 10 lighted wall sconces and aisle lighting running along the carpeted center aisle. According to Fernandez, the ceiling lights were turned off during the film and the wall sconces were dimmed. However, the aisle lighting remained on throughout the entire day and created a noticeable path up to the front of the theater.

Fernandez further testified that it was "strictly prohibited" for people to sit in or obstruct the aisles, and that he knew of no prior occasions when such conduct had occurred. The theaters were inspected by a Loews employee prior to each film and it was Loews's policy to have an employee conduct an "aisle check" every 15 to 20 minutes during the film. According to Fernandez, the purpose of the aisle check was to look for illegal smokers, to ensure that the temperature in the theater was comfortable, to make sure the movie was running properly and to check for "any other obstructions" that might interfere with

---

1. The owners were dismissed from the case during motion practice, a determination that is not at issue on this appeal.

the patrons' enjoyment of the film. Fernandez did not recall the names of the ushers working on the date of plaintiff's injury and although a daily inspection log indicating when the aisle checks were conducted was kept, he did not think Loews kept those records beyond the date when they were made.

Loews moved for summary judgment, arguing lack of actual or constructive notice of the boy sitting in the aisle. Relying on plaintiff's deposition testimony that she was absent for only seven or eight minutes and did not observe any obstructions in the aisle when she left to use the restroom, Loews argued that the boy could not have been in the aisle for a sufficient period of time to support a finding of constructive notice. Loews further argued that Fernandez's testimony established that the lighting was adequate and no other evidence established a violation of any building code provision.

In opposition, plaintiff argued that Loews failed to meet its initial burden of making a prima facie showing of entitlement to judgment as a matter of law, since Fernandez's testimony of general inspection practices did not, in the absence of the inspection logs for the specific date, demonstrate a lack of notice. Plaintiff further argued that Loews failed to meet its burden of showing that the lighting in the theater met or exceeded the applicable code requirements.

In addition, plaintiff submitted an affidavit from her friend, Ms. Mulzac, who stated that she had gone to the restroom prior to plaintiff's trip. On her way out, Mulzac noticed a young boy sitting in the aisle. Mulzac stated that she was in the restroom for 15 to 20 minutes and when she returned, the boy was still sitting in the same place in the aisle. Notably, Mulzac also stated that plaintiff was absent from the theater for 15 to 20 minutes while using the facilities, because "there was a long wait." Aggregating the time periods covering both trips to the restroom, and making them consecutive, Mulzac estimated that the boy must have been in the aisle for 30 to 40 minutes prior to plaintiff's accident. Mulzac further averred that she did not see any ushers checking the aisle during the movie and that "the running lights along the aisle were insufficient to properly illuminate the aisle."

In reply, Loews argued that Mulzac's affidavit was inconsistent with plaintiff's deposition testimony in material respects and was apparently tailored to avoid summary judgment. Loews also submitted photographs of the theater showing the aisle lighting during the running of a film and the results of an Internet search of the Building Department's records showing that no violations had been issued to this theater for inadequate lighting.

The motion court denied Loews's motion for summary judgment. It held that in light of Loews's policy of having ushers patrol the aisles every 15 to 20 minutes during the movie, plaintiff's testimony and Mulzac's affidavit together raised a triable issue of fact as to whether Loews had constructive notice of a boy sitting in the aisle of its darkened movie theater. Loews appeals and we now reverse.

A landowner has a duty to maintain its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to third parties, the potential seriousness of the injury and the burden of avoiding the risk (*Kellman v 45 Tiemann Assoc.*, 87 NY2d 871, 872 [1995]; *Basso v Miller*, 40 NY2d 233, 241 [1976]; *Perez v Bronx Park S. Assoc.*, 285 AD2d 402, 403 [2001], *lv denied* 97 NY2d 610 [2002]). This duty applies with equal force to landowners and tenants who operate places of public assembly, such as theaters, and requires them to provide members of the public with reasonably safe premises, including safe means of ingress and egress (*see Peralta v Henriquez*, 100 NY2d 139, 143-144 [2003]; *Gallagher v St. Raymond's R.C. Church*, 21 NY2d 554, 557 [1968]).

However, in order to recover damages for an alleged breach of this duty, the plaintiff must first demonstrate that the defendant created or had actual or constructive notice of the hazardous condition which precipitated the injury (*Piacquadio v Recine Realty Corp.*, 84 NY2d 967 [1994]; *Beck v J.J.A. Holding Corp.*, 12 AD3d 238, 240 [2004], *lv denied* 4 NY3d 705 [2005]; *Leo v Mt. St. Michael Academy*, 272 AD2d 145, 145-146 [2000]). To constitute constructive notice, which is the predicate for liability alleged in this action, the defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit the defendant or its agents to discover and remedy it (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]; *Perez*, 285 AD2d at 403).

On this motion for summary judgment, defendant Loews had the burden of making a prima facie showing of its entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). As plaintiff does not argue that Loews had actual notice of the boy, Loews's burden was to show a lack of constructive notice, i.e., that the boy was not in the aisle for a sufficient length of time for its employees to discover and remove him. In our view, Loews met this burden (*see Ulu v ITT Sheraton Corp.*, 27 AD3d 554, 554-555 [2006]).

Loews relies primarily on plaintiff's deposition testimony to

show a lack of constructive notice. According to that testimony, plaintiff left the theater by the center aisle in order to use the restroom and saw no one in the aisle at that time, nor at any earlier time. She was gone for approximately seven or eight minutes and returned directly to the theater. While returning by the same aisle and looking for her seat, plaintiff stumbled over a young boy sitting on the aisle floor. Based on these facts, Loews made a prima facie showing that the boy could not have been sitting in the aisle for more than eight minutes and must have arrived some time after plaintiff left for the restroom. This time line, supplied by plaintiff's own testimony, negates any inference that the boy was present for a sufficient period of time to permit an inference of constructive notice.

In response to this prima facie showing, the burden shifted to plaintiff to produce evidence sufficient to raise a triable issue of fact on the issue of constructive notice (*Alvarez*, 68 NY2d at 324). In finding a triable issue, the motion court's reliance on Loews's internal aisle-check policy was error. While a defendant's internal rules may be admissible as evidence of whether reasonable care was exercised, such rules must be excluded, as a matter of law, if they require a standard of care which transcends the traditional common-law standard of reasonable care under the circumstances (*see Gilson v Metropolitan Opera*, 5 NY3d 574, 577 [2005]; *Crosland v New York City Tr. Auth.*, 68 NY2d 165, 168-169 [1986]; *Prince v New York City Hous. Auth.*, 302 AD2d 285, 286 [2003]; *Clarke v New York City Tr. Auth.*, 174 AD2d 268, 275-276 [1992]). In the instant case, Loews's aisle-check policy required one of its employees to patrol the theater aisles every 15 to 20 minutes to check for smokers or obstructions and to otherwise make sure that nothing was interfering with the customers' enjoyment of the film. Even when viewed in a light most favorable to plaintiff, this internal policy imposed a higher duty of care than is required under the law. Thus, the motion court's reliance on it in finding a triable issue as to constructive notice was erroneous (*Gilson*, 5 NY3d at 577 [theater's internal policy requiring patrons to be escorted with flashlights after house lights went down exceeded ordinary standard of care and could not be basis for liability]).[2]

The remaining evidence offered by plaintiff in opposition also fails to raise a triable issue. Although Mulzac's affidavit estimates that the boy must have been sitting in the aisle for 35

2. Although Loews failed to raise this argument before the motion court, it correctly argues that purely legal issues may properly be considered by this Court for the first time on appeal (*see Public Serv. Mut. Ins. Co. v Zucker*, 225 AD2d 308, 309 [1996]).

to 40 minutes, which arguably might give rise to an inference of constructive notice, such affidavit is more notable for its glaring inconsistencies with plaintiff's own version of the accident. For instance, while plaintiff estimated she was absent for 7 or 8 minutes, Mulzac more than doubles that amount to 15 to 20 minutes. Further, while plaintiff testified that there was "no line" at the restroom, Mulzac stated in her affidavit that plaintiff took 15 to 20 minutes in the restroom because there was a "long wait." Finally, and most significantly, while plaintiff testified that she observed no one in the aisle when she left for the restroom, Mulzac impliedly suggests the opposite by indicating that the boy was present in the aisle during her own absence from the theater which, according to Mulzac, immediately preceded plaintiff's departure.

Thus, far from raising a triable issue of fact as to the duration of the boy's presence, Mulzac's affidavit gives rise to entirely different questions which cast grave doubt on her credibility. While issues of fact and credibility ordinarily may not be determined on a motion for summary judgment (*Santos v Temco Serv. Indus.*, 295 AD2d 218, 218-219 [2002]), courts have occasionally disregarded affidavits or other evidence submitted in opposition to such a motion where they directly contradict the plaintiff's own version of the accident and are plainly tailored to avoid dismissal of the action (*see Gloth v Brusco Equities*, 1 AD3d 294 [2003]; *Rodriguez v New York City Hous. Auth.*, 304 AD2d 468, 469 [2003]; *Phillips v Bronx Lebanon Hosp.*, 268 AD2d 318, 320 [2000]). In this case, Mulzac's affidavit is so completely at odds with plaintiff's deposition testimony and so clearly designed to lengthen the time period of the boy's presence in the aisle in order to raise a triable issue as to constructive notice, that this is one of those rare occasions where such evidence must be disregarded by this Court.

In the absence of Mulzac's affidavit and the motion court's erroneous reliance on Loews's aisle-check policy, there is no other record evidence from which a jury could infer that the boy was in the aisle for a sufficient period of time for Loews to discover and remove him (*see Gibbs v Port Auth. of N.Y.*, 17 AD3d 252, 255 [2005]). Accordingly, given "the total lack of evidence" in that regard, summary judgment should have been granted in favor of Loews on this branch of plaintiff's claim (*Berger v ISK Manhattan, Inc.*, 10 AD3d 510, 512 [2004]).

Nor is any triable issue raised in connection with plaintiff's allegation of inadequate lighting in the theater. Loews pointed to testimonial evidence showing that the wall sconces were dimmed during the movie, but that the aisle lighting remained

on throughout the entire day and created a "very noticeable" well-lit path down to the front row. On reply, Loews also produced photographs which confirm the brightness of these aisle lights, despite the relative darkness of the theater. In response to this prima facie showing, plaintiff cited her own deposition testimony that she did not observe any lights in the theater and Mulzac's affidavit stating that the aisle lighting was "insufficient." Since, again, there is a fundamental contradiction between plaintiff's and Mulzac's factual statements regarding the presence of lighting, we disregard Mulzac's affidavit and find that plaintiff's testimony alone is insufficient as a matter of law to raise a triable issue of fact on her claim of inadequate lighting. While plaintiff correctly notes that it is Loews's initial burden to make a prima facie showing of adequate lighting in the theater, we disagree with her argument that the testimony and photographs offered by Loews were insufficient to meet that burden.

Plaintiff's arguments concerning alleged building code violations are likewise unavailing. We reject plaintiff's suggestion that a human being's transient presence in a theater aisle violates Administrative Code of the City of New York § 27-532. Moreover, since the testimony and photographs were sufficient to show the adequacy of the lighting in the theater, plaintiff's conclusory argument to the contrary, based on the Mulzac affidavit we have already discredited, does not require a trial.

The dissent takes the position that Loews's internal aisle-check policy, together with certain "record facts," supports the inference that Loews had actual notice of the boy in the aisle, an argument never advanced by plaintiff on this appeal. The dissent's theory and the hypotheticals offered in support of it have no bearing on this case because they assume or supply certain facts not in the record. For example, both hypotheticals assume that the internal policy was followed without deviation, although there is no evidence that the internal policy was complied with at all on the date of plaintiff's accident. More significantly, the hypotheticals also supply a crucial fact missing from the record—the exact amount of time the boy was sitting in the aisle. If such evidence existed, there would be no dispute on the issue of constructive notice.

The dissent's argument is nothing more than an attempt to transform the requirement of actual notice to a possibility of actual notice. Critically, the evidence supplied by plaintiff herself demonstrates that the boy was present in the aisle for a very short time—eight minutes or less. Thus, the dissent's actual notice theory is premised on the mere possibility that one of

Loews's aisle checks conducted every 15 or 20 minutes *might* have overlapped with the boy's presence in the aisle, thereby providing actual notice of the dangerous condition.[3] This possibility, as can readily be discerned, is nothing more than rank speculation since there is no evidence in the record as to what time plaintiff went to the restroom, what time the boy arrived in the aisle (it could have been five seconds before plaintiff's fall), and what time the last aisle check occurred.

While proof that a defendant recently inspected an area that included a permanent or continuing dangerous condition can give rise to an inference of actual notice (*see Baker v International Paper Co.*, 226 AD2d 1007, 1008-1009 [1996] [inspection by defendant's employees on day before accident permitted inference of actual notice of "the old, rusted material and other debris"]), no such inference is available here where there is no actual proof of a recent inspection and the condition is a transient one.

We also note that Loews's failure to produce the aisle-check records has no bearing on the outcome. First, as noted, since there is no evidence as to what time the boy arrived in the aisle, the aisle-check logs would afford no inference as to how long he was there or whether Loews's employee should have seen him. For example, if the aisle-check log revealed that the last check occurred at 3:45 P.M., that time has no legal significance absent evidence regarding when the boy arrived or when plaintiff left for the restroom.

In short, because plaintiff's own testimony demonstrates that the boy was present for only a short period of time and Loews's inspection records, even if produced, would not give rise to an inference of actual or constructive notice, the failure to produce those records did not prevent Loews from meeting its initial burden of showing a lack of actual or constructive notice (*Deveau v CF Galleria at White Plains, LP*, 18 AD3d 695, 696 [2005] [sanction for spoliation of videotape not warranted where plaintiff not prejudiced by loss]; *Quinn v Holiday Health & Fitness Ctrs. of N.Y., Inc.*, 15 AD3d 857, 857-858 [2005] [lack of proof of recent inspections irrelevant where defect not visible and apparent]). We also note that unlike *Dorsa v National Amusements* (6 AD3d 652 [2004]), cited by the dissent, the record does not reveal that plaintiff sought any relief before the motion court for Loews's spoliation of evidence and, therefore, she is bound by the record as it existed before the motion court.

---

**3.** While the dissent makes much of plaintiff's disclaimer that she was "not sure" of the precise length of her absence, the words "seven or eight minutes" were supplied by her and a fair reading of her testimony indicates that it was her best approximation.

The dissent's attempt to rehabilitate the Mulzac affidavit is not persuasive. Whether her affidavit "simply differs" from plaintiff's deposition testimony or "directly contradicts" it, the facts remains that it is inconsistent with plaintiff's version of the facts on the critical issue of constructive notice. Reinforcing our "unrelenting and unreasonable cynicism" concerning Mulzac's credibility is the unanswered question raised in her affidavit: if Mulzac knew that the boy was obstructing the darkened aisle during her trip to the restroom and at the time of plaintiff's departure, why didn't she warn her friend or Loews personnel of the dangerous condition? Under our precedents, the affidavit was properly disregarded. Concur—Buckley, P.J., Nardelli, Williams and Gonzalez, JJ.

McGuire, J., dissents in a memorandum as follows: I respectfully dissent. The majority correctly states the holding in *Gilson v Metropolitan Opera* (5 NY3d 574 [2005]), but errs in concluding that *Gilson* requires reversal. To the contrary, the holding in *Gilson* does not control this appeal.

As the majority recognizes, landowners and tenants operating places of public assembly such as movie theaters, owe a duty "to provide members of the public with reasonably safe premises, including safe means of ingress and egress" (citations omitted). Plaintiff's position is that this duty is breached when the aisles of a darkened theater are not kept free of tripping hazards. Particularly because the screening plaintiff attended was sold out—thus increasing the risk that a patron might sit in the aisle to remain with his or her companions—and the movie was about three hours long—thus increasing the likelihood that patrons would leave their seats during the screening—plaintiff's position on the question of duty is not the focus of Loews's appeal.

To be sure, plaintiff could not rely on Loews's policy of having an employee check the aisles every 15 to 20 minutes to set or define the duty of care owed to her by Loews. This internal guideline apparently goes "beyond the standard of ordinary care," and thus "cannot serve as a basis for imposing liability" (*Gilson*, 5 NY3d at 577). Plaintiff, however, may rely on this internal guideline for a different reason—because it provides strong support for something else she must prove in addition to a breach of the duty of care. That is, that Loews had notice of the particular hazardous condition—the young boy sitting in the aisle of the darkened theater—that caused her injury. More specifically, and regardless of whether plaintiff could show that Loews had constructive notice of this hazardous condition, the internal guideline along with other record facts support the inference that Loews had actual notice.

That plaintiff properly can rely on this internal policy to establish Loews's actual notice without doing violence to the holding in *Gilson* can be seen by considering different internal policies. Suppose, for example, that Loews's policy was to have an employee check the aisles only once a day, at 6:45 P.M., and at 6:46 P.M. a patron tripped over a young child who had been sitting in the aisle for some five minutes. Surely the patron could rely on the policy in an effort to establish notice of the dangerous condition. The holding in *Gilson* would be manifestly irrelevant. Alternatively, suppose that Loews's policy was to have an employee check the aisle every two minutes, and a patron tripped over a young child who had been sitting in the aisle for seven or eight minutes. Although Loews would be entitled at trial to an instruction consistent with *Gilson* to the effect that the policy did not define its duty of care, there is no reason why the patron could not rely on the policy on the issue of notice.

In other words, the internal policy of Loews, to the extent it was followed in practice, is simply a fact of the case that bears on an empirical or factual question (what Loews knew). It makes no sense to disregard it merely because it could be misused on a normative or legal question (what Loews's duty of care was). Put differently, whether Loews or any alleged tortfeasor has actual notice of a dangerous condition because of foolish or wise internal policies is a matter about which tort law is and should be indifferent.

The holding in *Gilson* presents a formidable problem to any effort by plaintiff to establish that Loews had constructive notice of the tripping hazard presented by the young boy. An alleged tortfeasor has constructive notice of a defect if it is "visible and apparent and . . . exist[s] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986] [citations omitted]). Thus, whether an alleged tortfeasor had constructive notice is not necessarily a purely empirical issue, for its resolution may turn on the normative issue of what the alleged tortfeasor should have known (*see Lewis v Metropolitan Transp. Auth.*, 99 AD2d 246, 249 [1984], *affd* 64 NY2d 670 [1984] ["Constructive notice will generally be found where the defect is visible and apparent, and has been in that condition so long that (the alleged tortfeasor) is presumed to have seen it, *or to have been negligent in failing to see it*"] [emphasis added and internal quotation marks omitted]).

We need not determine whether plaintiff can demonstrate Loews's constructive notice consistently with the holding in

*Gilson.* As discussed below, the submissions on the motion for summary judgment were sufficient to support the inference that Loews had actual notice. Nor does it matter that plaintiff's position on this appeal is that a material issue of fact was raised on whether Loews had constructive rather than actual notice. In opposing Loews's motion for summary judgment, plaintiff expressly argued that Loews had "failed to shoulder [its] initial burden of proof to eliminate all issues of fact as to any lack of actual or constructive notice of the condition that caused [her] to fall" (*see Karras v County of Westchester*, 272 AD2d 377 [2000]). Although the majority's analysis of the constructive notice issue is beside the point, a brief discussion of the flaws in that analysis sheds light on the issue of actual notice.

The majority wrongly concludes that the "time line, supplied by plaintiff's own testimony, negates any inference that the boy was present for a sufficient period of time to permit an inference of constructive notice." Obviously enough, defendant's last aisle check prior to plaintiff's fall and plaintiff's act of getting out of her seat to go to the bathroom were temporally independent events. Accordingly, if plaintiff was gone for eight minutes and a Loews employee checked the aisles during this screening of the movie every 15 minutes, the odds of actual notice are in plaintiff's favor as there would be a slightly better than 50 percent chance the employee checked the aisle during that eight-minute period.[1] I recognize that the odds cut against plaintiff if she was gone for seven minutes and a Loews employee checked the aisles during this screening every 20 minutes. The point, however, is that the majority cannot reasonably conclude that plaintiff's own time line "negates . . . an inference of constructive notice."

Happily, this appeal need not turn on niceties of probability theory. Nor should it turn on plaintiff's own testimony. Rather, it should turn on the affidavit of plaintiff's companion, Ms. Mulzac, which—unless disregarded—unquestionably raised a material issue of fact on actual notice that precludes the granting of Loews's motion for summary judgment.

In her affidavit, Ms. Mulzac stated that the boy was in the aisle when she went to the bathroom; that she was out of her seat for "approximately 15-20 minutes"; that the boy remained in the aisle when she returned; that plaintiff then went to the bathroom, and "took approximately the same 15-20 minutes to use the facilities, as there was a long wait, and to return"; and

---

1. That assumes, of course, that the young boy was sitting in the aisle when, or immediately after, plaintiff walked up the aisle on her way to the bathroom.

that plaintiff then tripped over the same boy. Accordingly, as Ms. Mulzac summarized, "the minimum total time that [the boy] was in the aisle . . . was 30-40 minutes and perhaps longer." On these facts, the inference that Loews had actual notice is compelling. After all, if Loews complied with its internal policy—and there was no evidence it did not—the Loews employee or employees who patrolled the aisles would have seen the boy in the aisle at least once and perhaps twice. Unquestionably, moreover, actual notice can be inferred by the trier of fact (see Dorsa v National Amusements, 6 AD3d 652, 653 [2004]; Baker v International Paper Co., 226 AD2d 1007, 1008-1009 [1996]).[2]

The majority's disregard of Ms. Mulzac's affidavit is not defensible. As the majority recognizes, the occasions on which an affidavit or other testimonial evidence can be disregarded on a motion for summary judgment are "rare." The majority correctly describes those occasions as ones in which the "affidavits or other evidence submitted in opposition to such a motion [for summary judgment] . . . directly contradict the plaintiff's own version of the accident and are plainly tailored to avoid dismissal of the action" (citations omitted). Although Ms. Mulzac's affidavit differs from plaintiff's deposition testimony, it does not "directly contradict" the key testimony of plaintiff, and it can be seen as "plainly tailored" only with unrelenting and unreasonable cynicism.

In the first place, plaintiff did not specify or warrant in her deposition that she was gone from the theater for only seven or eight minutes. Rather, she expressly testified that she was unsure. Asked how long she was outside before she returned,

---

**2.** In Dorsa, the plaintiff's decedent sued the operator of a movie theater, alleging she had fallen after slipping on water the theater negligently permitted to accumulate near the entrance to a restroom. Maintenance records of the theater were destroyed after it received notice of plaintiff's claim. The Second Department directed that an adverse inference charge be given on the issue of actual notice, explaining that the destruction of the records "prevented the plaintiff from obtaining evidence from which a trier of fact may have been able to reasonably infer that the defendant had actual notice of a recurring dangerous condition" (6 AD3d at 653 [citations omitted]). On this appeal, plaintiff cites Dorsa and refers this Court to deposition testimony of a manager of the theater. In that testimony, which was before Supreme Court on Loews's motion for summary judgment, the manager was asked whether records were kept identifying the ushers assigned to inspect the aisles every 15 to 20 minutes. His response was, "We had at the time a placement sheet or layout sheet, but I don't think we kept it for records after the day [of plaintiff's fall]." Because Loews's motion for summary judgment was properly denied for other reasons, it is not necessary to determine whether plaintiff preserved for review his contention that the absence of these records provides an additional ground for inferring that Loews had notice of the boy sitting in the aisle.

she answered "I'd say about seven or eight minutes. I'm not sure." Moreover, plaintiff, who was 73 years old at the time of the accident (and 79 years old when she was deposed), testified that she had broken her arm and was in a lot of pain; she was taken out of the theater on a stretcher and by ambulance to the hospital. For these reasons—and because it is a matter of common experience that some persons are better at estimating time than others—the only reasonable conclusion is that plaintiff may have been mistaken in estimating that she was out of the theater for seven or eight minutes.[3] The majority, however, does more than inexplicably and implicitly conclude that plaintiff was not mistaken. It concludes that Ms. Mulzac's affidavit about the amount of time is transparently false ("plainly tailored" and "clearly designed to lengthen the time period").

As noted, furthermore, with respect to the amount of time that elapsed, Ms. Mulzac's affidavit simply differs from plaintiff's deposition testimony. The one does not "directly contradict" the other. For this reason alone, the majority's reliance on each of the three cases it cites (*Gloth v Brusco Equities*, 1 AD3d 294 [2003]; *Rodriguez v New York City Hous. Auth.*, 304 AD2d 468 [2003]; *Phillips v Bronx Lebanon Hosp.*, 268 AD2d 318 [2000]) is misplaced. And in *Rodriguez* and *Phillips*, the affidavit or testimony offered to defeat the motion for summary judgment contradicted deposition testimony of the plaintiff on a matter about which it was at least unusual that the plaintiff could be wrong. (In the other case, *Gloth*, this Court's opinion does not indicate the nature of the "contradict[ion]" [1 AD3d at 294] between the plaintiff's own testimony and his affidavit.) The affidavit in *Rodriguez*, moreover, was suspect for another reason; it was proffered after the plaintiff had filed a note of issue and made by an alleged witness who had not previously been disclosed (304 AD2d at 469). By contrast, plaintiff revealed in her deposition (taken almost a year and a half before the date of the affidavit) that she went to the movie with Ms. Mulzac.

True, Ms. Mulzac's affidavit and plaintiff's deposition contradict each other in two respects. That is, plaintiff testified that

---

**3.** Other reasons to conclude plaintiff's estimate of seven or eight minutes was mistakenly short were aptly stated by her attorney in his affirmation in support of plaintiff's cross motion for summary judgment on liability. Addressing opposing counsel, plaintiff's counsel stated as follows: "Please, tell the jury that a 79 year-old woman can get out of her chair in a movie theatre, walk past other patrons in their chairs to reach the aisle, walk up the aisle to the back of the theatre, find the bathroom, use the facilities, wash her hands, leave the bathroom, find the correct theatre in a large multiplex, go back down the aisle, all in 7-8 minutes."

the boy was not in the aisle when she got up and there was no line for the bathroom; Ms. Mulzac's affidavit stated that the boy was in the aisle when she went to and returned from the bathroom, just before plaintiff got up, and that there was a long line for the bathroom. Why plaintiff's version must be correct and Ms. Mulzac's version must not only be wrong but dishonestly wrong, is something the majority does not and cannot explain. Again, it is a matter of common experience that some inconsistencies between the perceptions and recollections of witnesses are only natural and can be indicative of an absence of collusion.

Because it is not factually defensible, the majority's position is not legally defensible either (see *Ferrante v American Lung Assn.*, 90 NY2d 623, 631 [1997] ["It is not the court's function on a motion for summary judgment to assess credibility" (citations omitted)]; *Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439, 441 [1968] ["The court may not weigh the credibility of the affiants on a motion for summary judgment unless it clearly appears that the issues are not genuine, but feigned"]). The majority's error, in short, is titanic.

In sum, plaintiff raised a triable issue of fact regarding the issue of notice with respect to her claim that Loews negligently permitted the boy to sit in the aisle during the showing of the movie. Accordingly, I would affirm the order denying Loews's motion for summary judgment dismissing the complaint.[4]

---

4. Loews also failed to make a prima facie showing of entitlement to judgment as a matter of law dismissing plaintiff's separate cause of action based upon Loews's failure to provide proper illumination in the theater. The only evidence Loews submitted in support of its motion was the deposition testimony of its managing director and that of plaintiff. The managing director's testimony was essentially that the lighting in the subject theater was sufficient; plaintiff's testimony, by contrast, was essentially that the theater was "pitch black" with insufficient illumination in the theater during the film. The photographs submitted by Loews with its reply papers may not be considered in assessing whether it made a prima facie showing of entitlement to judgment as a matter of law dismissing the inadequate lighting claim (see *Rengifo v City of New York*, 7 AD3d 773 [2004] ["to meet its prima facie burden, (movant) could not rely on the evidence submitted for the first time in its reply papers"]; *Migdol v City of New York*, 291 AD2d 201 [2002] ["affidavit of another employee submitted with appellant's reply papers was properly rejected by the motion court since it sought to remedy . . . basic deficiencies in appellant's prima facie showing rather than respond to arguments in plaintiff's opposition papers"]). In any event, there was no evidence that the two photographs accurately depicted the lighting in the theater at the time the accident occurred (see *Richardson v Rotterdam Sq. Mall*, 289 AD2d 679 [2001]).