OPINION OF THE COURT
Robert J. Miller, J.
In this action seeking damages for personal injuries allegedly sustained by plaintiff Alana Sierra when she was descending a staircase from the third to the second floor located in a building at 100 Smith Street, Brooklyn, New York, the defendant building owner Steven D’Apuzzo (D’Apuzzo or owner) moves for summary judgment to dismiss the complaint. D’Apuzzo asserts that the defects alleged by the plaintiff are not actionable because the owner had no notice of any defects and the plaintiff cannot show that the staircase was defective or unsafe or that there were any building code violations. Plaintiff opposes the motion asserting that there are questions of fact as to whether there was a wobbly banister, and whether the steps were unsafe, in that there was a defective condition since the stairwell had poor lighting and loose carpeting which was too dark a color to distinguish the different steps.
Liability can be imposed on a building’s owner if the owner either caused or created the alleged condition or had actual or constructive notice of it. (Hayden v Waldbaum, Inc., 63 AD3d 679 [2d Dept 2009].) The defendant is said to have constructive notice of a defect when it is visible and apparent and existed for a sufficient length of time before the accident that it could have been discovered. (Gordon v American Museum of Natural History, 67 NY2d 836 [1986].)
Plaintiff testified that her accident occurred as she left the third floor where she worked as a child-care giver for a tenant of the building, Mr. Jay Weiner. Plaintiff stated that she worked at that location since September of 2007 and had been at the location about five times per week up to the date of the accident, December 3, 2007. She testified that her accident happened when she was on the fourth step between the third and second floors when the carpet moved with her foot and she slipped and fell on the landing. When asked if there was anything about the stairs themselves that made her fall, she answered that is was “the carpeting” and that “it was hard to see the edge of the stairs being that the carpeting was so dark, it was dark out and the lighting was dim. Carpeting itself was slightly loose, and the *173 handle itself was wobbly.” Plaintiff said she noticed the loose condition of the carpet since she had started working at the building. She never complained to anyone.
A tenant of the building and employer of the plaintiff, Weiner testified at deposition that at the time of the plaintiffs fall, he responded to her accident and spoke with the plaintiff. His “impression was that she did not know what caused her to fall.” Weiner testified that he had lived in the apartment for approximately six years and that the carpeting was newly installed sometime after he moved in. He described the carpeting as “not shaggy,” industrial and placed on the steps in a continuous piece. Weiner testified that he did not make any complaints to the owner about the condition of the carpeting or the lighting of the stairwell. Weiner testified about lighting in the stairwell and indicated that there was a window on the third floor, a light fixture on the landings between the first and second floors and the second and third floors. The fixtures had energy-saving fluorescent bulbs hanging down, and an additional lighting wall fixture between the second and third floors with a light bulb that he couldn’t describe. When asked if he recalled if all the lights were working on December 3, 2007, Weiner stated that he did not have a specific recollection but “would say almost certainly, yes.”
An affidavit from D’Apuzzo indicated that prior to December 3, 2007, he never received any complaints from Weiner or anyone else regarding the staircase between the second and third floors and was not aware of any dangerous or defective condition or a need of repair. D’Apuzzo stated that he had replaced the carpeting on the steps a few years prior to the plaintiff’s accident. He indicated that he had some work performed on the steps between the second and third floors a few years before because the steps were squeaking. He did not replace the steps or alter the steps in any way.
The defendant asserts that he has established, based on the testimony of the plaintiff and the tenant and the affidavits of Mark Marpet, a mechanical engineer, and John Chester, a field investigator, that the defendant landlord did not have actual or constructive notice of any defect in the stairs nor did he cause or create a dangerous or defective condition. The defendant also asserts that the plaintiffs testimony stating that the handrail was slightly loose does not create an issue of fact or establish that the landlord caused and/or created a defective condition. Lastly, the defendant claims that all applicable building codes were met.
*174 In opposition, the plaintiff submits that the plaintiff’s testimony along with the plaintiffs expert’s report by a professional engineer, Mr. Robert L. Schwartzberg, establishes that there are material issues of fact as to whether the owner caused or created the condition, that the stairs do not conform with building codes, that the defendant created a defective or dangerous condition because the steps were covered in a dark material which caused a lack of demarcation between the steps, and that there was a lack of adequate lighting.
Expert Opinions
Before the court considers whether the landlord caused or created the condition or had actual or constructive notice of the condition, the court must first address the threshold issue of whether the plaintiffs expert’s affidavit should be considered in opposition to the defendant’s motion. The defendant in reply to the plaintiffs opposition asserts that the court should reject the plaintiffs expert’s report pursuant to Construction by Singletree, Inc. v Lowe (55 AD3d 861 [2d Dept 2008]). The Appellate Division in Singletree rejected an appellant’s expert’s affidavit in opposition to the respondent’s motion for summary judgment because the appellant’s expert was not identified until after the note of issue and certificate of readiness were filed and the appellant offered no valid excuse for failure to give notice of the expert.
Here, plaintiff filed her note of issue and certificate of readiness attesting to the completion of discovery on July 29, 2009. The defendant moved for summary judgment on September 25, 2009. Plaintiff served her CPLR 3101 (d) response on October 12, 2009 and did not serve her expert’s affidavit until she served her opposition to the defendant’s summary judgment motion. Plaintiff offers no excuse for the delay.
However, at oral argument on the motion, the plaintiff raised the issue that the defendant did not serve his expert’s affidavit until the defendant submitted his summary judgment motion. The court has not been provided with any discovery orders issued prior to the note of issue and certificate of readiness and therefore cannot opine on what demand or schedule of exchange may have been agreed upon by the parties. Any expert reports to be used in a summary judgment motion should have been exchanged prior to the note of issue and certificate of readiness following the ruling in Singletree.
The court notes that the plaintiff’s expert Robert L. Schwartzberg’s report indicates he visited the scene of the ac *175 cident on July 27, 2009 (two days prior to the day the note of issue and certificate of readiness were filed) and wrote a report dated August 20, 2009. The defendant’s expert, Mark I. Marpet, visited the scene on September 10, 2009 and wrote a report dated September 22, 2009.
Here, since both parties submit expert reports that were written after the note of issue and certificate of readiness were filed, the court, in its discretion, declines the defendant’s request to reject the plaintiffs expert’s report and considers both the defendant’s and the plaintiff’s experts’ reports. (Howard v Kennedy, 60 AD3d 905 [2d Dept 2009].)
Notice
Addressing first the issue of notice, the plaintiff asserts that the landlord had constructive notice of the dark carpeting because he installed it. The court finds that the plaintiff has not established that the landlord had constructive notice of the condition that the dark carpeting was actually a defect and that it was a defect existing for a sufficient period of time prior to the accident in which the defendant could discover it. (Gordon v American Museum of Natural History, 67 NY2d 836 [1986].) Furthermore, the plaintiff has failed to demonstrate that the owner had any notice as to the looseness of the carpeting or the handrail. The court next looks to whether the landlord caused and/or created an allegedly defective or dangerous condition.
Cause and Create
As to the issue of whether there was a dangerous condition caused by the owner regarding inadequate lighting of the stairwell, the court looks first to the testimony of Weiner who testified that the lights were on at the time of the accident, that there were lights at the top landing and the bottom landing as well as in the wall unit going down the steps between the floors, that the light always remains on and that he never made complaints to the landlord about the lighting conditions in the stairwell. Weiner also testified that he himself would change the light bulbs in that stairway area. The defendant’s expert in addressing the light fixtures comments that “[t]here were fixtures illuminating the staircase. One of those fixtures was located on the wall above the landing between the second and third floors; it was equipped with a compact flo[u]rescent bulb.” The defendant’s expert further comments that he “measured the illumination falling on the steps using a Minolta T-l illumination meter” and concludes that “the illumination level was above the 1 foot-candle level required for other-than public corridors.” However, *176 the defendant’s expert was not clear on what other lamps were lit at the time of his observation, other than the fixture located on the wall. Therefore, his opinion as to whether the stairs were well lit on the night of the accident is inconsequential, as the conditions upon which he comments are not the same as outlined by the tenant-eyewitness. The court finds, based on Weiner’s testimony, that the defendant has established a prima facie case that the lighting in the area was adequate and that the defendant did not cause or create a condition of lack of lighting. (Jones v Presbyterian Hosp. in City of N.Y., 3 AD3d 225 [1st Dept 2004]; Gibbons v Lido & Point Lookout Fire Dist., 293 AD2d 646 [2d Dept 2002].) The burden now shifts to the plaintiff to demonstrate triable issues of fact.
The court next looks to the plaintiffs testimony regarding the dim lighting. However, the plaintiffs testimony alone that the lighting was dim does not establish the existence of material issues of fact for trial about the sufficiency of the lighting. (Branham v Loews Orpheum Cinemas, Inc., 31 AD3d 319, 325 [1st Dept 2006], affd 8 NY3d 931 [2007].) Consequently the court looks to plaintiffs expert’s opinion which comments only on the one light fixture in the wall and does not speak to any tests done or the conditions as they may have been at the time of the accident. Therefore, the plaintiffs expert’s opinion as to the insufficiency of the lighting is conclusory and unsubstantiated, and insufficient to raise a triable issue of fact. (Trummer v Niewisch, 17 AD3d 349 [2d Dept 2005].)
Looking next to whether the dark color of the carpeting caused and created a dangerous condition, the plaintiff’s testimony that “it was hard to see the edge of the stairs being that the carpeting was so dark” taken by itself does not establish that the defendant caused or created the condition. Plaintiffs expert makes general conclusions that the stairs were unsafe but does not directly speak to the color of the carpeting as causing a problem. The fact that the carpeting may have caused an optical illusion or that one step was indistinguishable from the next does not establish that a dangerous condition existed. (Schwartz v Hersh, 50 AD3d 1011 [2d Dept 2008]; Jones v Presbyterian Hosp. in City of N.Y., 3 AD3d 225 [2004].) Furthermore, the carpeting on the stairs presented an open and obvious condition that was not inherently dangerous. This coupled with the fact that the plaintiff had walked up and down the stairs numerous time since starting her job means she was familiar with the color of the carpet which did not create a hid *177 den trap. (Pipitone v 7-Eleven, Inc., 67 AD3d 879 [2d Dept 2009].)
As to whether the defendant caused or created the dangerous condition of the carpeting being loose, Weiner does not describe the tightness or looseness of the carpeting on the particular step that plaintiff is alleged to have fallen on. However, he does describe that the carpeting runs in one piece from the top to the bottom and is not “shaggy.” The defendant’s engineering expert comments that the carpeting at the time of his report is tight but does not describe what if anything he observed concerning the fourth step where the plaintiff fell. The plaintiffs expert, who was accompanied by the plaintiff to the accident site, makes the observation that “the subject stairway was noted to be worn, stained and discolored” and “that the carpeting atop the treads at the subject stairway was noted to move slightly underfoot when stepped upon.” However, the plaintiffs expert engineer never comments on the specific step that plaintiff alleges she fell on and does not give any measurements as to what a “slight” amount of movement was. Furthermore, none of the photographs submitted by the defendant or the plaintiff’s engineering expert depict any looseness of carpeting on the fourth step. Therefore, there is nothing in the record to establish that the owner caused or created a condition of loose carpeting.
Addressing next the plaintiff’s assertion that the handrail was wobbly, the tenant does not comment on the steadiness of the handrail. D’Apuzzo in his affidavit mentions that work was done to firm up the stairs because they were squeaking. The defendant’s expert states that he “loaded the handrail using [his] body weight, which would be far more load than would be transferred to the handrail by a person descending the step. The Handrail shifted only slightly, indicating that it was quite rigidly fastened to the stair treads.” The defendant’s expert does not indicate what a “slight shift” is. Plaintiff’s expert engineer does not make any direct comment about whether the handrail shifted or was wobbly. The court finds that plaintiff has failed to raise a triable issue of fact relating to a defect in the handrail.
Plaintiff asserts that the defendant has a continuing duty as an owner with respect to maintaining the property in a reasonably safe manner (Jacqueline S. v City of New York, 81 NY2d 288 [1993].) The question of fact regarding the absence of two handrails and unequal height which may have been present was *178 not appropriately testified to by the plaintiffs expert who makes general assumptions and conclusory statements in his opinion:
“It is our professional opinion that the building owner, the building management and those responsible for maintenance and safety at the subject stairway did not comply with the requirements regarding maintaining the building, its structures and its system in good, safe, and serviceable condition.
“It is also our professional opinion, with a high degree of engineering certainty, that a conscientious visual inspection of the subject stairway by a building owner, an employee of the owner or a member of the maintenance staff would have disclosed the unsafe conditions at the subject stairway. Further, it is our considered opinion that the unsafe conditions were in place for a sufficiently long period of time prior to the date of the accident in which Alana Sierra was injured thereat for the reasonable parties to have noticed the unsafe conditions and to have made the necessary repairs and/or alterations needed to eliminate the unsafe conditions.”
Furthermore, the plaintiffs expert never addressed the specific condition as it relates to the fourth step. Therefore, plaintiffs allegation based on common-law principles of negligence regarding the general condition of the stairwell does not raise triable issues of fact (Washington v Albany Hous. Auth., 297 AD2d 426 [2002]; Zebzda v Hudson St., LLC, 72 AD3d 679 [2010]).
Building Code Violations
Defendant’s expert opines that the code violations alleged in plaintiffs complaint regarding the “stairs in question meet the requirements of the 1899 Building Code and the Tenement Act, in that the stairs had proper handrails, which were maintained in good condition. The stairs and the handrail were, at the time of [his] inspection, robust and in good condition.”
Plaintiffs bill of particulars does not assert any specific building violations. However the plaintiffs expert opines that the owner was in violation of current codes regarding the risers and treads, guards and handrails (as there was only one handrail, not two, going down the steps) and that the lighting was in violation of a lighting code. However, the plaintiffs expert does not discuss whether the particular step that plaintiff fell on was in violation of the code and the expert speculates that the *179 plaintiff was caused to fall by the lack of the required number of handrails. (Plowden v Stevens Partners, LLC, 45 AD3d 659 [2d Dept 2007].) Furthermore, there is no relation at all within the plaintiffs expert’s report of the loose or dark carpeting or wobbly handrail as being in violation of any code provision.
Accordingly, the defendant is entitled to summary judgment as he has established that the landlord did not have actual or constructive notice of any dangerous condition and that the plaintiff cannot establish any of the conditions that were alleged based on lack of lighting, dark or loose carpeting, wobbly handrail or violation of any building code.
Accordingly summary judgment is granted.