■ DEVON MOORE, an Infant, by His Mother and Natural Guardian, GINA TOWNSEND, Respondent, v NEW YORK MEDICAL GROUP, P.C., et al., Defendants, and NEW YORK CITY HEALTH & HOSPITALS CORPORATION, Appellant. [843 NYS2d 225]—

Order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered April 7, 2005, which, to the extent appealed from as limited by the briefs, denied the cross motion by defendant New York City Health & Hospitals Corporation (HHC) for summary judgment dismissing the complaint as against it, reversed, on the law, without costs, the cross motion granted and the complaint dismissed as against HHC. The Clerk is directed to enter judgment accordingly.

At approximately 11:00 P.M. on April 16, 1993, plaintiff's mother brought the then three-week-old plaintiff to the emergency room of Jacobi Medical Center (Jacobi), a facility operated by HHC. A triage nurse spoke with plaintiff's mother and evaluated plaintiff. The nurse noted: "Complained of not taking bottle times five hours ago. Feeding well with good suck at triage . . . crying a lot, as per mom, no vomiting or diarrhea, denied fever. Right testicle swollen, cries every diaper change." The nurse observed plaintiff crying in the emergency room, but that he was "consolable."

Following his triage evaluation, plaintiff was examined by a resident. The resident noted the following information before examining plaintiff: "A three-week-old with a known hydrocele [on his right testicle] since birth. Mom noticed three days ago increased lump with crying. Today increased crying, decreased oral intake, increased swelling. Past medical history, birth history normal, has been eating well except for today, three to four ounces every three hours." After examining plaintiff the resi-

dent diagnosed plaintiff with a hydrocele on his right testicle and a right inguinal hernia. With respect to the hernia, the resident noted "positive swelling, no erytheme" (i.e., redness). The hernia was reducible—the intestinal tissue protruding into plaintiff's scrotum could be pushed back into the abdominal cavity—and was reduced by the resident.[1] The attending physician, a board-certified pediatrician, reviewed the resident's note, examined plaintiff and signed the resident's note.

Plaintiff was discharged at approximately 5:30 A.M. on April 17 and his mother was instructed to make a follow up visit to the Health Insurance Plan of Greater New York (HIP), plaintiff's primary care provider. Plaintiff's mother was informed that plaintiff would require surgery and that she should make an appointment for such surgery at HIP. Plaintiff's mother was cautioned to watch for symptoms of incarceration (i.e., a hernia that is difficult to or cannot be reduced).

Plaintiff's mother took him to a HIP facility several hours after he was discharged from Jacobi. The physician who examined plaintiff confirmed that plaintiff had a right inguinal hernia that could be reduced. The physician "explained to [plaintiff's mother] that if the swelling [in the area of the hernia] continue[d] and c[ould not] be reduced or [plaintiff] cr[ied] or vomit[ed]," plaintiff should be brought to the emergency room. The physician also advised plaintiff's mother to return to the facility in three days.

Two days later, on April 19, plaintiff's mother returned to HIP with plaintiff for his regular check-up. The physician who examined plaintiff was unable to reduce the hernia and immediately sent him for a pediatric surgical consultation. The surgeon determined that the hernia was incarcerated and operated two days later to repair the hernia. Following the operation it was determined that plaintiff's right testicle had liquified leaving him with only one viable testicle.

Plaintiff's mother commenced this action on his behalf, claiming, among other things, that HHC employees departed from good and accepted medical practice by failing to immediately refer plaintiff to a surgeon to repair the hernia. In response to plaintiff's motion for an open commission to take the deposition of the resident who treated plaintiff at Jacobi, HHC cross-moved for summary judgment dismissing the complaint as against it. HHC argued that the treatment provided to plaintiff by its personnel comported with good and accepted medical practice.

---

1. The resident examined plaintiff and reduced the hernia at approximately 5:00 a.m. on April 17.

The cross motion was supported by the affirmation of a board-certified pediatrician, who opined that plaintiff's condition was properly diagnosed and treated by the employees of HHC. Specifically, the expert stated that plaintiff's hernia was not incarcerated when he was treated at Jacobi, that reduction of the hernia was the proper course of action and that the discharge plan for plaintiff (i.e., advise mother to follow up with primary care provider and need for surgical intervention, and counsel mother about the signs of incarcerated hernia) was medically sound. The expert also stated that, even assuming the hernia was incarcerated when plaintiff was treated at Jacobi, accepted medical practice dictated that surgery be performed 24 to 48 hours after the hernia was reduced to allow swelling in the area of the hernia to decrease. Therefore, since the hernia was reduced by the resident at Jacobi, surgery would not have been performed earlier than the following day, by which time plaintiff had been seen by his primary care provider.

In opposition to the cross motion, plaintiff submitted the affirmation of a physician, board-certified in general medicine, who averred that the medical history taken and physical examination performed by the triage nurse and physicians at Jacobi were deficient, and that physicians at Jacobi failed to appreciate the seriousness of plaintiff's condition. Plaintiff's expert opined that the hernia was incarcerated when he received treatment at Jacobi and that the physicians at Jacobi negligently failed to refer plaintiff for immediate surgery. Supreme Court found that plaintiff's expert's affidavit was sufficient to raise triable issues of fact regarding the liability of HHC and denied the cross motion.

Through the affidavit of its expert, HHC demonstrated its entitlement to judgment as a matter of law dismissing the complaint on the ground that the treatment provided to plaintiff by the personnel at Jacobi comported with good and accepted medical practice. The burden shifted to plaintiff to demonstrate the existence of a triable issue of fact, which plaintiff failed to do. Plaintiff's expert's opinions regarding the treatment provided to plaintiff by the personnel at Jacobi are based on the expert's conclusion that, when plaintiff received that treatment, the hernia was incarcerated. That conclusion, however, is not supported by the record.

Plaintiff's expert stated that fussiness, discomfort caused by pain, poor feeding, vomiting, skin discoloration and unconsolable crying are symptoms associated with an incarcerated hernia. Plaintiff, however, only demonstrated one of these symptoms at Jacobi—discomfort. The triage nurse and physi-

cian's notes expressly indicate that plaintiff, while "not taking bottle times five hours" before visiting the emergency room, was feeding well,[2] was not vomiting, had no redness in the area of the hernia and was consolable when crying. While there is certainly evidence that plaintiff cried frequently and the personnel at Jacobi were aware of that fact, it is, as *plaintiff's* expert averred, the presence of *unconsolable* crying that is indicative of an incarcerated hernia.[3] Plaintiff's expert's assertion that "[i]f the . . . family provides a history of a painful bulge in the inguinal region, one must suspect the presence of an incarcerated inguinal hernia" is unremarkable. After all, the personnel at Jacobi did *suspect* that plaintiff suffered from a hernia—and so diagnosed plaintiff—and were concerned that the hernia might become incarcerated. It is, according to plaintiff's expert, the presence of other factors (i.e., fussiness, discomfort caused by pain, poor feeding, vomiting, skin discoloration and unconsolable crying) that indicate that an infant is suffering from an incarcerated hernia. Notwithstanding that plaintiff's expert defined an incarcerated hernia as one "that is 'stuck' or confined and therefore irreducible," the expert does not address that the resident was in fact able to reduce the hernia on April 17. This omission further undercuts plaintiff's expert's conclusion that plaintiff had an incarcerated hernia when he received treatment at Jacobi.

Accordingly, the factual premise upon which plaintiff's expert's opinion is based—that the hernia was incarcerated at the time he was treated at Jacobi—is unsupported by the evidence and his conclusions therefore are without probative value (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542 [2002]; *Micciola v Sacchi*, 36 AD3d 869 [2007]; *Masotto v Leddy*, 18 AD3d 452 [2005]; *Mendez v City of New York*, 295 AD2d 487 [2002]).[4] Similarly lacking in factual support is plaintiff's expert's speculative insinuation that the resident may have

---

**2.** According to plaintiff's mother, plaintiff had a bottle while in Jacobi's emergency room.

**3.** Plaintiff's mother's deposition testimony regarding the extent of plaintiff's crying is only relevant to the extent she recalled what she told the personnel at Jacobi. The personnel at Jacobi can only be charged with notice of information imparted to them by plaintiff's mother. Plaintiff's mother's deposition testimony in this regard simply confirmed that she told the triage nurse that plaintiff "had been crying a lot." Notably, plaintiff's mother testified that plaintiff was consolable when crying.

**4.** It is unclear what the dissent means by its statement that "[i]t is precisely because the record points to the possibility, rather than any conclusion as to whether the hernia was already incarcerated that I believe a triable issue of fact exists precluding summary judgment to either party." In any event, the mere possibility the hernia was incarcerated when plaintiff received

caused damage to the right testicle by reducing the hernia "too forcefully or incompletely."[5]

Additionally, plaintiff's expert failed to address the other critical point made by HHC's expert: that, even assuming the hernia was incarcerated when plaintiff was treated at Jacobi, accepted medical practice dictated that surgery be performed 24 to 48 hours after the hernia was reduced to allow swelling to decrease. This opinion, moreover, was echoed by the surgeon who repaired plaintiff's hernia. Plaintiff's hernia was reduced by the resident at Jacobi and, assuming HHC's expert and the surgeon are correct, the earliest surgery could have been performed was April 18, the date on which plaintiff's mother brought him to HIP. Nevertheless, plaintiff's expert failed to address this contention (*see Slone v Salzer*, 7 AD3d 609 [2004]; *Kaplan v Hamilton Med. Assoc.*, 262 AD2d 609 [1999]; *see also Rebozo v Wilen*, 41 AD3d 457 [2007]). Therefore, even assuming that the hernia was incarcerated when plaintiff was treated at Jacobi, plaintiff failed to raise a triable issue of fact regarding whether the alleged negligence of defendant was a proximate cause of plaintiff's injuries.[6] Concur—Friedman, J.P., Nardelli, Buckley and McGuire, JJ.

Catterson, J., dissents in a memorandum as follows: Because in my view a triable issue of fact exists as to when surgery should have been performed on the three-week-old plaintiff in order to save his testicle, I respectfully dissent.

In this medical malpractice action, the uncontroverted facts are that the plaintiff Devon Moore was brought to the emergency room of Jacobi Hospital on the night of April 16, 1993. His mother was directed to the emergency room by her Health

---

treatment at Jacobi is not sufficient to defeat the motion for summary judgment; a *triable issue of fact* must be present to warrant denial of defendant's motion (*see e.g. Gilson v Metropolitan Opera*, 5 NY3d 574, 578 [2005] ["Only the existence of a bona fide issue raised by evidentiary facts and not one based on conclusory or irrelevant allegations will suffice to defeat summary judgment"]; *Two Clinton Sq. Corp. v Gorin Stores*, 51 AD2d 643, 644 [1976] [only existence of bona fide triable issue of fact will preclude summary judgment]).

5. The entire discussion by the expert of this alleged departure is as follows: "the process of reducing the hernia *can* damage the testicle *if* it is done too forcefully or incompletely. An incomplete reduction *could* leave the testis stuck in the opening and cause strangulation or loss of blood supply to the testis" (emphasis added).

6. Plaintiff's expert's affidavit also failed to raise a triable issue of fact with respect to whether the triage nurse's failure to ask plaintiff's mother about the duration of the swelling in plaintiff's groin area was a proximate cause of plaintiff's injuries. Plaintiff's expert offered no opinion at all on the issue of the causal relationship between this alleged departure and plaintiff's injuries.

Insurance Plan of Greater New York medical provider after describing Devon's symptoms as a lump in the groin area and constant crying. In the emergency room, Devon was diagnosed with a right inguinal hernia and hydrocele (which had been diagnosed at birth). The hospital record shows that the hernia was described as "reducible." Devon was discharged in the early hours of April 17, and the record shows that his mother was given follow-up instructions to make a surgical appointment for him. Five days later, on April 21, when surgery was finally performed on Devon, surgical records indicate that one of the testicles had completely liquified and the "entire scrotum [was] filled with some old hemorrhagic tissue."

The plaintiff's mother and guardian commenced this action, alleging, inter alia, that Jacobi Hospital, a facility operated by the defendant-appellant New York City Health & Hospitals Corporation (HHC), departed from an acceptable medical standard of care in failing to diagnose the severity of Devon's condition, and failing to immediately refer Devon for surgery. The defendant cross-moved for summary judgment asserting that the plaintiff failed to make a prima facie showing that HHC had failed to comply with accepted medical procedure when treating Devon. The motion court denied the defendant's cross motion for summary judgment ruling that a triable issue of fact exists as to whether surgery should have been performed on April 17, 1993. In my view, for the reasons set forth below, the motion court ruled correctly.

The emergency room physicians and Devon's surgeon all testified in depositions that surgical treatment of a pediatric inguinal hernia is always required. The defendant, however, claims that the accepted standard of care in cases of pediatric hernias that are "reducible" is to reduce them and discharge the patient with instructions to follow up with his private physician and a request for a surgical appointment. The defendant's expert, Dr. Miller, opined that because the hernia was "reduced easily," the "discharge plan by Jacobi Medical Center for this infant . . . was appropriate and in accordance with accepted standards of medical practice."

On the other hand, the plaintiff's expert opined that "[a] clinician cannot wait until the hernia is clearly incarcerated" before operating and, thus, "[i]t was a departure from the standard of care to have delayed surgery until there was clear evidence of strangulation, evidenced by an inability to reduce." The plaintiff's expert further opined that based on Devon's symptoms "an incarcerated hernia should have been diagnosed."

The majority asserts that, plaintiff's expert's conclusion that

the hernia was incarcerated when he was treated at Jacobi is not supported by the record. On the defendant's motion for summary judgment, however, the plaintiff does not bear the burden of establishing that the hernia was actually incarcerated. Indeed, if such diagnosis of an incarcerated hernia was supported by the record, then in all likelihood, the plaintiff would be entitled to partial summary judgment, at least on the issue that defendant had departed from the accepted standard of medical care by not scheduling surgery or summoning a pediatric surgeon to the emergency room.

It is precisely because the record points to the *possibility*, rather than any conclusion as to whether the hernia was already incarcerated that I believe a triable issue of fact exists precluding summary judgment to either party.

The following is evidence of record that, in my opinion, raises issues of fact as to the severity of Devon's condition on April 17: The plaintiff's expert stated that the presence of an incarcerated hernia may be suspected if the "family provides a history of a painful bulge in the inguinal region." Indeed, this is precisely the reason the plaintiff's mother brought him to the emergency room. According to the plaintiff's expert, other symptoms "associated" with an incarcerated hernia include "fussiness, obvious discomfort, poor feeding, vomiting" and "skin discoloration."

Contrary to the majority observation that the triage nurse in the emergency room noted only one of those symptoms, it was noted in the plaintiff's chart by the triage nurse on April 17 that plaintiff was unwilling to feed, he "cr[ies] a lot, as per mom," "[r]ight testicle swollen, [and] cries every diaper change."* The plaintiff's expert stated that such "history of persistent crying [is] indicative of probable abdominal pain which may suggests [sic] bowel obstruction, which may occur with an incarcerated or strangulated hernia."

Further, Dr. Sellinger, the attending physician in the emergency room on the night of April 16, 1993, failed to testify that all of the above-mentioned factors are necessary in evaluating whether incarceration has occurred. In the doctor's deposition, the following exchange occurred:

"Q: Short of the baby being totally inconsolable, would you consider crying to be a factor in how you assess the seriousness of the inguinal hernia?

"A: It is *one* of the factors" (emphasis added).

---

* During the mother's deposition, she testified that Devon "was always crying, . . . just crying, crying, crying . . . [h]e cries all day."

Additionally, Dr. Sellinger testified as to how she would have instructed plaintiff's mother on symptoms of incarceration: "I would have explained to a patient's mother that if . . . she notices that there is redness, increased swelling, vomiting, but I really have to say that its mostly looking at the area. *The vomiting or inconsolable crying will come later*" (emphasis added). According to Dr. Sellinger, the fluctuations in the size of the swelling and the duration were the single most important factors in determining incarceration.

Significantly, at deposition, the triage nurse conceded that she had not taken down as "thorough" a history as she should have done. In fact, the triage nurse conceded that she should have asked about the *duration of swelling* to establish the severity of the condition.

Further, while the defendant argues that the plaintiff's hernia was not incarcerated because had it been, it could not have been reduced, that theory is at odds with the testimony of the plaintiff's surgeon, Dr. Weinberg. Dr. Weinberg stated that his procedure was "if a child has a hernia that's incarcerated that I reduce, I wait 24 to 48 hours to schedule a repair." Thus, we find that the record, rather than conclusively establishing the severity of plaintiff's condition, only raises issues of fact which cannot be resolved on a motion for summary judgment.

The plaintiff also raises a triable of issue of fact as to whether the hernia was improperly reduced, resulting in the loss of the right testicle. The plaintiff's expert opined that the process of reducing the hernia may cause damage to the testicle "if it is done too forcefully or incompletely" and "[a]n incomplete reduction could leave the testis stuck in the opening and cause strangulation or loss of blood supply to the testis." Because of the repeated attempts made to reduce the hernia by defendant-appellant hospital, I believe there is also a triable issue of fact as to whether the defendant was the cause of the incarceration.