(January 12, 2016)

■ JULIE KATZ, Respondent, v UNITED SYNAGOGUE OF CONSERVATIVE JUDAISM, Appellant. [23 NYS3d 183]—

Order of the Appellate Term of the Supreme Court, First Department, entered on or about January 28, 2014, which reversed an order of the Civil Court, New York County (Frank P. Nervo, J.), entered April 17, 2012, granting defendant's motion for summary judgment dismissing the complaint, denied the motion, and reinstated the complaint, affirmed, without costs.

Plaintiff suffered a knee injury while participating in a study-abroad program in Israel that was operated by defendant. At the time of her injury, she was a 19-year old student

who had limited knowledge of Hebrew and was living in a small town in southern Israel, in an apartment provided to her by the program, which also provided the participants with counselors in order to help them with, inter alia, medical issues. According to plaintiff when physical therapy was prescribed for her knee injury, defendant refused to arrange for such treatment and, as a result, her recovery was delayed and compromised.

In order to establish a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a duty and breached that duty, and that the breach proximately caused the plaintiff harm (*see Kenney v City of New York*, 30 AD3d 261, 262 [1st Dept 2006]). The existence of a duty depends on the circumstances, and the issue is one of law for the court; "the court is to apply a broad range of societal and policy factors" (*Hayes v Riverbend Hous. Co., Inc.*, 40 AD3d 500, 500 [1st Dept 2007], *lv denied* 9 NY3d 809 [2007]).

In determining the threshold question of whether a defendant owes a plaintiff a duty of care, courts must balance relevant factors, "including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 586 [1994]). The parties' relationship may create a duty where it "places the defendant in the best position to protect against the risk of harm . . . and . . . the specter of limitless liability is not present" (*Matter of New York City Asbestos Litig.*, 5 NY3d 486, 494 [2005] [internal quotation marks omitted]). Thus, where a defendant exercises a sufficient degree of control over an event, a duty of care to plaintiff may arise (*see Derezeas v Robert H. Glover & Assoc., Inc.*, 121 AD3d 523 [1st Dept 2014] [defendant owed pedestrian, who was injured by a runner, a duty of care because it supervised a running class, including selecting the route and providing coaches to ensure that runners stayed on the left and warn pedestrians]; *Hores v Sargent*, 230 AD2d 712, 712 [2d Dept 1996] [college, which organized and supervised a bicycle trip, selected the route, operated vans to help riders, and instructed participants on safety, had "a sufficient degree of control over the subject event, and thus was under a duty to take reasonable precautions for the safety of the participants"]).

Here, the parties' relationship created a duty to provide plaintiff with the necessary medical care because not only did defendant agree to do so, it was in the "best position to protect

against the risk of harm" and "the specter of limitless liability [was] not present" (*Matter of New York City Asbestos Litig.*, 5 NY3d at 494 [internal quotation marks omitted]). The program was not an ordinary college or study-abroad program. Indeed, the second "semester" did not take place in a university environment. Rather, it took place in Yerucham, a small town in the Negev desert, involved volunteering, and was supervised by counselors who did "[p]retty much everything," including responding to medical issues. Under the circumstances, defendant exercised a sufficient degree of control over the program to create a duty of care to plaintiff (*see Derezeas*, 121 AD3d at 523; *Hores v Sargent*, 230 AD2d at 712).

Our holding that a duty of care exists in this case is not premised on the doctrine of in loco parentis.* Accordingly, to the extent *Wells v Bard Coll.* (184 AD2d 304 [1st Dept 1992]) and *McNeil v Wagner Coll.* (246 AD2d 516 [2d Dept 1998]) hold that in loco parentis does not apply at the college level, that holding is irrelevant to our analysis.

In any event, *Wells* and *McNeil* are easily distinguishable from the facts of the present case. In *Wells*, the student did not avail himself of available medical care and refused medical assistance, and there was no basis to find that defendant ever knew of the seriousness of his illness. In contrast, here, the program allegedly refused to comply with plaintiff's request that it arrange for insurance coverage for, and transportation to, physical therapy. Moreover, there is no indication in *Wells* that plaintiff relied on the theory that defendant assumed the duty.

In *McNeil*, which involved a student studying abroad, the Court found that "the defendant had no obligation to supervise the plaintiff's health care following her accident" (246 AD2d at 517). The court rejected plaintiff's contention that the program administrator, who accompanied her to the hospital and allegedly failed to inform her that the physician recommended immediate surgery, "voluntarily assumed a duty of care by acting as her interpreter . . . and that his breach of that duty placed

---

* The in loco parentis doctrine may apply to create a duty of care where a defendant takes the place of a plaintiff's parents. However, "New York has affirmatively rejected the doctrine of in loco parentis at the college level (*Wells v Bard Coll.*, 184 AD2d 304, 304 [1st Dept 1992], citing *Eiseman v State of New York*, 70 NY2d 175, 190 [1987], *lv dismissed in part, denied in part* 80 NY2d 971 [1992]; *see also Sirohi v Lee*, 222 AD2d 222 [1st Dept 1995], *lv dismissed in part, denied in part* 88 NY2d 897 [1996]). In so doing, the courts have found that colleges do not owe their adult students a duty to supervise their health care following an accident (*see Wells v Bard Coll.*, 184 AD2d at 304; *McNeil v Wagner Coll.*, 246 AD2d 516, 517 [2d Dept 1998]).

her in a more vulnerable position," since there was evidence that the physician could speak English, and plaintiff's claim that the administrator was told of the recommendation of surgery was unsupported (*id.*).

In contrast, plaintiff testified that defendant represented that it would assist her with medical care, which practice the program director confirmed, and plaintiff's testimony that the program refused to help her obtain prescribed physical therapy is unrefuted, which circumstances are compounded by a language barrier and the remoteness of Yerucham, requiring that plaintiff travel for treatment. Under these circumstances, defendant failed to establish, as a matter of law, that it did not owe plaintiff a duty to arrange for physical therapy (*see Matter of New York City Asbestos Litig.*, 5 NY3d at 494; *Hores*, 230 AD2d at 712). While plaintiff, an adult, with access to her parents in another country and family in Jerusalem, may not have been as helpless as she makes herself out to be, that fact is but one factor to consider.

Defendant accurately maintains that its general internal policy of accompanying injured participants to medical appointments and arranging for transportation to treatment in remote areas does not create a legal duty. However, the failure to provide access to physical therapy here was more than a policy violation. Plaintiff's testimony that she was told that the program would set up medical appointments for her and attend them with her is uncontroverted and consistent with the program's accompaniment of plaintiff to the hospital and doctors' appointments.

Furthermore, it was foreseeable that the failure to arrange for prescribed care could compromise recovery. Defendant also maintains that, even if it owed plaintiff a duty, that duty was not breached because the program took plaintiff for medical treatment and "follow[ed] the general recommendations of the doctors who examined Plaintiff." This argument ignores the fact that plaintiff was prescribed physical therapy, which was not provided.

We disagree with the dissent's assertion that even if defendant owed plaintiff a duty, defendant met its prima facie burden on causation, and plaintiff failed to submit sufficient evidence to raise an issue of fact as to whether she suffered harm as a result of defendant's failure to arrange for physical therapy. Contrary to the dissent, defendant failed to make a prima facie showing that plaintiff's injuries were not caused or exacerbated by the alleged breach, and, thus, the burden never shifted to plaintiff on this issue (*see Winegrad v New York Univ. Med.*

*Ctr.*, 64 NY2d 851, 853 [1985]; *Collado v Jiacono*, 126 AD3d 927, 928 [2d Dept 2015] ["a moving defendant does not meet its burden of affirmatively establishing its entitlement to judgment as a matter of law by merely pointing to gaps in the plaintiff's case. It must affirmatively demonstrate the merit of its claim or defense"]).

On the motion, defendant improperly attempted to shift the initial burden to plaintiff, by challenging the existence of evidence as to causation, rather than affirmatively establishing a lack of causation, such as via an expert affidavit. Defendant argued that "[p]laintiff has failed to produce any evidence . . . suggesting that [defendant's] conduct caused her injury to worsen," and proceeded to poke holes in plaintiff's theory of causation, as does the dissent (*Davranov v 470 Realty Assoc., LLC*, 79 AD3d 697 [2d Dept 2010] [defendant cannot satisfy burden merely by pointing out gaps in plaintiff's case]). While plaintiff's ability to establish a causal connection may be difficult, that does not establish the absence of a causal connection. Concur—Acosta, Saxe and Moskowitz, JJ.

Tom, J.P., and Andrias, J., dissent in a memorandum by Andrias, J., as follows: Plaintiff was a participant in defendant's Nativ Program, in which first-year-college level students live, study, and perform volunteer work in Israel for 9 or 10 months. She alleges that defendant was negligent in failing to arrange for the physical therapy, including transportation, prescribed in Israel after she injured her right knee, and that this failure caused a longer-than-otherwise recovery period following the surgical procedures she underwent upon her return to the United States to repair a patellar dislocation, and a less favorable result.

Defendant moved for summary judgment on the grounds that it did not owe the college-aged plaintiff a duty to supervise her medical care while she participated in the program and that, in any event, its alleged negligence did not cause her any compensable harm. Civil Court granted the motion, holding that defendant had demonstrated prima facie that its alleged failure to arrange for physical therapy was not a substantial factor in causing plaintiff's injuries, which could only be alleviated by surgery, and that the conclusory affirmation of plaintiff's medical expert was insufficient to raise an issue of fact. Appellate Term reversed (42 Misc 3d 109, 111 [App Term, 1st Dept 2014]), holding that: (1) "[m]ixed questions of law and fact are raised as to whether defendant owed plaintiff a duty to supervise her medical care in the unusual circumstances of the fact pattern here presented," and (2) if a duty exists, questions

of fact exist as to whether defendant breached it and whether the breach caused or exacerbated plaintiff's injuries.

The majority affirms Appellate Term's determination, albeit on different grounds. Stating that this "was not an ordinary college or study-abroad program," the majority holds that defendant exercised a sufficient degree of control over the program to create a duty to provide plaintiff with the necessary medical care, independent of the doctrine of in loco parentis. Further, while acknowledging that "plaintiff's ability to establish a causal connection may be difficult," the majority denies summary judgment to defendant on the ground that it failed to establish prima facie that plaintiff's injuries were not exacerbated by its failure to arrange for the physical therapy, thereby avoiding the issue of whether Appellate Term erred when it held that the affirmation by plaintiff's medical expert was sufficient to raise an issue as to causation.

I do not agree. As a matter of law, defendant did not owe plaintiff, a 19-year-old college-level student in a gap year program, a duty to supervise her medical care. Even if such a duty existed, defendant established prima facie that its alleged refusal to arrange for plaintiff's physical therapy was not a proximate cause of her injuries. In opposition, the conclusory affidavit by plaintiff's expert orthopedist did not suffice to raise an issue of fact. Accordingly, I respectfully dissent and would reinstate Civil Court's grant of summary judgment dismissing the complaint.

The program provided plaintiff with medical insurance and an insurance card. Plaintiff was also told that program staff would contact doctors, set up appointments, and attend them with her, should the need arise.

In September 2007, while studying at a university in Jerusalem, during the first semester of the program, plaintiff twisted her right knee. She was treated by a doctor who told her that she should return in two weeks if the knee was still bothering her. The pain lasted for one to two weeks, and plaintiff did not return. This was not the first time plaintiff had experienced a problem with her knees. In her medical forms for the program, she disclosed that she had arthritis and had worn a knee brace for sore joints "years ago."

For the second semester, plaintiff lived in Yerucham, a small town in southern Israel, an hour and a half away from Jerusalem, where she performed volunteer work. Still, plaintiff was not completely on her own. She had a host family in the town, relatives in Jerusalem, and a cell phone that she could use to contact her parents.

On March 5, 2008, while on a trip to a kibbutz in northern Israel, plaintiff reinjured her right knee when she fell and struck it on the sidewalk while her boyfriend was giving her a piggyback ride. Staff members iced the knee, and on the next day brought her, accompanied by her boyfriend, to a hospital in Be'er Sheva, which was a half an hour away from Yerucham. There, a doctor told plaintiff that her knee was filled with fluid, and advised her to rest and return in two weeks to get it drained, if it remained swollen. Plaintiff informed her parents about the incident.

On March 12, 2008, plaintiff, accompanied by a staff member, was taken to see Dr. Yuri Zilberman, an orthopedist in Be'er Sheva. Dr. Zilberman drained plaintiff's knee and prescribed an MRI. His records state that plaintiff reported sustaining a right knee trauma six months earlier and that a recent fall worsened the pain.

On March 24, 2008, plaintiff, accompanied by an assistant director of the program, underwent the MRI and saw Dr. Daniel Plotkin, an orthopedist, who first believed that she had a torn meniscus. On March 31, plaintiff, accompanied by the assistant director of the program, returned to Dr. Plotkin, who diagnosed her with a bone contusion and/or bruise and for the first time prescribed physical therapy. Surgery was discussed, but Dr. Plotkin and the assistant director did not think it was a good idea for plaintiff to undergo surgery in Israel because the closest physical rehabilitation center to Yerucham was in Be'er Sheva.

Plaintiff testified that she asked the assistant director to contact the insurance company to arrange for the prescribed physical therapy and that the assistant director never called because "[plaintiff was] gonna be in Yerucham for a little bit and [the assistant director] [didn't] know how [defendant was] going to get [plaintiff] to and out of Beer Sheva and [the program was] going back to Jerusalem." Plaintiff also testified that she mentioned the need for physical therapy to the program's director, and that "[h]e didn't really say one way or the other." Plaintiff also talked to her parents about the situation. They were not happy and may have called her rabbi in New Jersey or defendant's New York office about it.

Plaintiff testified that she did not contact the insurance company herself because she believed it was the program's responsibility, she did not have the money for transportation to and from Be'er Sheva, and the insurance company representatives did not speak English. In her application for the Nativ program, plaintiff had identified her reading and writing of Hebrew as "[g]ood" and speaking of Hebrew as "[p]oor."

On April 1, 2008, the day after she last saw Dr. Plotkin, plaintiff participated in a group activity in which she performed a dance with other women. During the week of April 6th, she participated in a hiking trip. On May 19, 2008, the program ended, and plaintiff returned home to New Jersey.

On June 4, 2008, Dr. Gerardo Goldberger, an orthopedic surgeon, found the MRI films from Israel to be consistent with a patellar lateral dislocation. He recommended physical therapy, ice, and anti-inflammatories. After reviewing a new MRI, on July 15, 2008, Dr. Goldberger diagnosed plaintiff with "[r]ecurrent dislocation of the right patella with contusion . . . and disruption of the medial patellar ligament," and recommended surgery. Plaintiff acknowledges that physical therapy would not have obviated her need for surgery to repair her patellar dislocation, which was not diagnosed until she returned to the United States.

On July 24, 2008, Dr. Goldberger discussed surgery with plaintiff, along with the need for extensive, post-operative physical therapy. On July 28, 2008, he performed an arthroscopy of the right knee, with debridement of the patellofemoral joint and large osteochondral defect. The operative report reflects that plaintiff sustained the original trauma eight months earlier and "did not receive adequate medical care in identifying the pathology" and that Dr. Goldberger recommended surgery because plaintiff's severe symptoms "were . . . not responding to medical and conservative approaches."

On August 4, 2008, Dr. Goldberger performed an open arthrotomy in order to repair an osteochondral lesion and defect in the patella, debride the patellofemoral joint, and release of lateral tendons, which involved the placement of hardware. On August 12, Dr. Goldberger noted that physical therapy would be re-started. At a September 12, 2008 visit, Dr. Goldberger recommended that physical therapy be continued. At an October 8, 2008 visit, he noted that plaintiff had "developed a significant pattern of arthrofibrosis with restriction of motion, for which she has regressed on each examination." On October 13, 2008, plaintiff underwent a third surgery.

On November 3, 2008, plaintiff saw Dr. James Cozzarelli, who noted that plaintiff was "very happy with her progress" and "able to fully extend." Dr. Cozzarelli advised plaintiff to continue physical therapy. On December 18, 2008, Dr. Goldberger noted that plaintiff was doing "remarkably well," and recommended further physical therapy "for the final restoration and strength." However, plaintiff stopped physical therapy after one semester at SUNY-Binghamton because it was allegedly interfering with her grade point average.

On July 21, 2009, Dr. Goldberger noted the presence of extensive grinding of the patellofemoral joint, and that plaintiff reported that her right knee pain "is not severe unless she performs an extensive pattern of impact aerobics." At a September 18, 2009 visit, Dr. Alan Nasar noted that plaintiff reported having "been quite active recently with a lot of dancing," after which her knee swelled and stiffened.

To recover for negligence, a plaintiff must establish that the defendant owed a duty to use reasonable care, that the defendant breached the duty of care, and that the breach of such duty was a proximate cause of the plaintiff's injuries (*see Pulka v Edelman*, 40 NY2d 781, 782 [1976]). "Absent a duty running directly to the injured [party] there can be no liability in damages, however careless the conduct or foreseeable the harm" (*532 Madison Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280, 289 [2001]). Whether a duty exists and, if so, the scope of that duty, are questions of law for the court to decide (*see Church v Callanan Indus.*, 99 NY2d 104, 110-111 [2002]).

Plaintiff alleges in her complaint that "[u]pon information and belief following [her] injury the leaders and counselors in the Nativ Program were responsible for insuring that [she] received the necessary medical treatment for [her] injury. The leaders and counselors had custody and control of the participants in the Nativ Program including plaintiff." However, "New York has affirmatively rejected the doctrine of in loco parentis at the college level"; colleges and universities have "no obligation . . . to monitor the health of [students]" and no duty to "seek medical assistance on [students'] behalf" (*Wells v Bard Coll.*, 184 AD2d 304, 304 [1st Dept 1992], *lv dismissed in part, denied in part* 80 NY2d 971 [1992]; *see also Sirohi v Lee*, 222 AD2d 222 [1st Dept 1995], *lv dismissed in part, denied in part* 88 NY2d 897 [1996]).

This holding has been applied to the duty to supervise medical care of college-level students in study abroad programs. In *McNeil v Wagner Coll.* (246 AD2d 516 [2d Dept 1998]), the plaintiff broke her ankle in a town in Austria, which she was visiting as part of an overseas program arranged by Wagner College. The plaintiff claimed that she sustained permanent injuries as a result of Wagner's negligent supervision of her medical care because the program's administrator failed to inform her of the treating physician's recommendation that she undergo immediate surgery. The Second Department held that "Supreme Court properly determined that the defendant had no obligation to supervise the plaintiff's health care following her accident" (246 AD2d at 517).

The majority believes that defendant nevertheless owed plaintiff a duty to supervise her medical care because defendant exercised a sufficient degree of control over the program and agreed to provide for all of her medical needs, including scheduling and transporting her to appointments, and was in the best position to protect against the risk of harm. However, plaintiff, an adult, had her own insurance card and cell phone and informed her parents of the accident and the alleged failure of defendant to grant her request for physical therapy. She also had family in Jerusalem, and, as the majority concedes, may not have been as helpless as she makes herself out to be.

Furthermore, " 'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated' " (*Brown v Wyckoff Hgts. Med. Ctr.*, 28 AD3d 412, 413 [2d Dept 2006], quoting *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389 [1987]). "While a defendant's internal rules may be admissible as evidence of whether reasonable care was exercised, such rules must be excluded, as a matter of law, if they require a standard of care which transcends the traditional common-law standard of reasonable care under the circumstances" (*Branham v Loews Orpheum Cinemas, Inc.*, 31 AD3d 319, 323 [1st Dept 2006], *affd* 8 NY3d 931 [2007]; *see also Gilson v Metropolitan Opera*, 5 NY3d 574, 577 [2005]).

Accordingly, I see no basis to depart from the holdings in *Wells* and *McNeil*. Plaintiff does not assert a claim for breach of contract, and defendant had no duty to seek further medical care for plaintiff.

Even assuming that defendant owed a duty to plaintiff to supervise her medical care, including physical therapy, defendant established prima facie that its alleged negligence did not cause plaintiff's injuries. While the majority states that defendant improperly attempted to shift the initial burden to plaintiff, defendant satisfied its burden on causation by submitting, inter alia, (1) the medical records of Dr. Goldberger, which demonstrated that plaintiff had suffered the full extent of her injury to her right knee by March 2008 and "did not receive adequate medical care in identifying the pathology," that plaintiff's symptoms "were . . . not responding to medical and conservative approaches," and that plaintiff did not follow through on the recommended post-surgery physical therapy; (2) plaintiff's testimony that physical therapy would not have obviated her need for surgery to repair her patellar dislocation; (3) a letter dated June 23, 2010 from an orthopedist hired by plaintiff to plaintiff's counsel opining that surgical interven-

tion within a few weeks would have been the most appropriate treatment and that it was the delay of almost five months between the injury and the surgery that "deprived [plaintiff] of the best opportunity for a satisfactory result of treatment"; and (4) an affidavit describing plaintiff's participation in a group activity, the day after her last visit to Dr. Plotkin, in which she performed a dance with other women, and in a hiking trip a week later. By these submissions, defendant established prima facie that the alleged breach could not have caused any deterioration to plaintiff's condition, as her patellar dislocation, which was visible on the March 2008 MRI but not diagnosed in Israel, required surgical repair whether she had preoperative physical therapy or not, that the presurgical physical therapy she underwent in the United States did not obviate the need for surgery, and that it was the delay in diagnosing her condition and performing the surgery that was the cause of her alleged injuries.

In opposition, plaintiff was required to submit evidence in admissible form sufficient to raise an issue of fact as to whether she suffered harm as a result of defendant's failure to arrange for the physical therapy. The December 2011 affirmation of her expert, Dr. Cassels, who appears to be the same orthopedist that authored the June 23, 2010 letter attributing plaintiff's injuries to the five month delay in performing the required surgery, did not satisfy that burden (*see Romano v Stanley*, 90 NY2d 444, 451-452 [1997]; *Moore v New York Med. Group, P.C.*, 44 AD3d 393 [1st Dept 2007], *lv dismissed* 10 NY3d 740 [2008]).

Dr. Cassels failed to provide an evidentiary basis for his finding that earlier physical therapy would have resulted in a better recovery. He did not examine plaintiff or identify the records he examined. He did not indicate whether he had knowledge of plaintiff's original September 2007 injury, her pre-surgical course of physical therapy, her subsequent refusal to complete physical therapy, or her engagement in strenuous physical activity. Nor did plaintiff produce any other evidence that would support her claim that her recovery time was extended by defendant's failure to arrange for physical therapy and that her injuries were not simply caused by September 2007 and March 2008 accidents.

Accordingly, defendant's motion for summary judgment dismissing the complaint should be granted.